## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY SPIKES, et al., | Civil Action No. 13-3669 (AET) |
| **Plaintiffs,** | |
| v. | **MEMORANDUM OPINION** |
| HAMILTON FARM GOLF CLUB, LLC, et al., | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Defendant Hamilton Farm Golf Club, LLC's[1] ("HFGC") motion to compel discovery [Docket Entry No. 35] and motion to amend its pleading [Docket Entry No. 36]. Through its motions, HFGC seeks to raise affirmative defenses based on *res judicata* and collateral estoppel in its Answer and to conduct discovery on the facts relevant to those defenses. Plaintiffs have opposed HFGC's motions. The Court has fully reviewed the papers submitted in support of and in opposition to HFGC's motions. The Court considers HFGC's motions without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, HFGC's motions are DENIED.

## I.     Background and Procedural History

The parties and the Court are familiar with this case. As a result, the Court does not restate the facts at length herein. This case, like many others that have been pursued in the courts

---

[1] HF Business Trust remains a named Defendant in this matter. However, it appears that the only specific factual allegations against it in the Complaint, ¶¶ 24-26, pertain to Plaintiffs' Fourth Count for fraudulent conveyance, which was dismissed by the District Court in its Opinion and Order entered January 24, 2014 [Docket Entry Nos. 25 & 26]. As such, the pending motions were filed only on behalf of HFGC.

of New Jersey,[2] arises out of HFGC's refusal to refund Plaintiffs' membership deposits that they paid as part a golf membership program at HFGC.  The Membership Agreement required Plaintiffs to pay a "Refundable Membership Deposit."  According to the Membership Plan, "[i]f the member resigns before the end of the 30 year-period, the membership deposit paid by the member or the amount of the membership deposit then charged by the Club for the membership, whichever is less, will be refunded, without interest, within 30 days after the issuance of the membership by the Club to a new member."  (Pl. Cmplt.¶ 19 (internal quotation marks omitted); Docket Entry No. 1).  Further, according to the Membership Agreement, HFGC reserved the right "to add, issue or modify any type or category of membership."  (Pl. Cmplt., Ex. D).

Based on the information contained in the Membership Plan, Membership Agreement and Frequently Asked Questions ("FAQ") pamphlet created by HFGC, Plaintiffs became members in HFGC paying membership fees in the amounts of $160,000, 200,500, $202,500 and $212,000.  (Pl. Cmplt. ¶20).  Between 2009 and 2011, Plaintiffs each resigned from HFGC.  (*Id.* ¶¶2-5).  Despite their resignation and the purportedly refundable nature of their membership deposits, HFGC has not repaid the money allegedly due and owing to Plaintiffs.  (*Id.* ¶21).

When Plaintiffs joined HFGC, there were only two categories of memberships available for purchase:  Individual Golf Memberships ("IGM") and Family Golf Memberships ("FGM").  (Pl. Cmplt., Ex. C).  After Plaintiffs joined HFGC, HFGC created a New Golf Membership ("NGM").  Plaintiffs claim that the NGM provided members with "identical rights for a lesser cost than that of Plaintiffs' membership[s]."  (Pl. Cmplt. ¶ 1).  Plaintiffs further allege that the NGM were created for the sole purpose of HFGC "avoid[ing] its obligation to repay resigned

---

[2] These cases include:  (1) *Meiselman v. Hamilton Farm Golf Club LLC*, Civ. No. 11-653; (2) *Bava v. Hamilton Farm Golf Club, et al.*, Civ. No. 08-5473; (3) *Matina v. Hamilton Farm Golf Club, et al.*, Civ. No. 08-5725; and (4) *McCarthy v. Hamilton Farm Golf Club*, Doc. No. SOM-L-267-11.

members." (Pl. Cmplt. ¶ 22). Based on the foregoing, Plaintiffs claim that HFGC breached the covenant of good faith and fair dealing. (Pl. Cmplt. ¶¶ 38-39).[3]

On February 5, 2014, after the District Court had granted in part and denied in part its motion to dismiss, HFGC answered Plaintiffs' Complaint.[4] (Docket Entry No. 27). At the time its Answer was filed, litigation concerning HFGC's refundable membership deposits had been ongoing for over 5 years and the *Meiselman* matter in particular had been pending for 3. The day after HFGC answered Plaintiffs' Complaint, the Court entered an Order scheduling the Initial Conference for March 11, 2014. (Order Scheduling Conference of 2/6/2014; Docket Entry No. 28). The Court conducted the Initial Conference as scheduled on March 11, 2014. While the *Meiselman* matter was briefly discussed during the Initial Conference, a formal discovery schedule was entered in this case setting various deadlines, including fact and expert discovery deadlines and deadlines for motions to amend the pleadings and to join new parties. (Scheduling Order of 3/11/2014; Docket Entry No. 29). A status conference was also scheduled for July 9, 2014. (*Id*.)

During the July 9, 2014 telephone conference, the Court addressed the status of these proceedings, including the progress the parties were making with respect to discovery. Given the overlapping subject matter, the Court again briefly discussed the *Meiselman* proceedings. At that juncture, the Court determined that the *Meiselman* matter did not impact the proceedings here. As a result, this case continued to move forward with the Court extending the parties'

---

[3] Plaintiffs originally raised six other counts in their Complaint. These counts, however, have since been dismissed based both on Plaintiffs' voluntary withdrawal of certain causes of action and the District Court's dismissal of others. (*See* Opinion and Order entered on 1/24/2014; Docket Entry Nos. 25 & 26).
[4] The Court understands that the motion to dismiss and other documents were filed on behalf of both HFGC and the HF Business Trust. However, for convenience purposes, the Court refers solely to HFGC herein.

deadlines, specifically extending fact discovery to November 11, 2014, and scheduling another status conference for October 30, 2014.  (*See* Minute Entry of 7/9/2014).

In advance of the status conference scheduled for October 30, 2014, the Court received correspondence from the parties regarding certain discovery issues.  The correspondence also addressed whether this matter should be stayed pending a final disposition in the *Meiselman* case.  With respect to the contemplated stay, Plaintiffs wrote that they were "cognizant of the effect that a ruling in the *Meiselman* matter may have on its [sic] case, and as such have agreed to stay further discovery pending the outcome of the *Meiselman* matter.  Defendants have represented that they would, by way of collateral estoppel, be bound by the *Meiselman* outcome."  (Letter from Evans C. Anyanwu to Hon. Tonianne J. Bongiovanni of 1/22/2014 at 2).  HFGC responded:

> [I]n raising the possibility of a stay in this case, Mr. Anyanwu has disclosed preliminary discussions between counsel that took place earlier this week.  These discussions did not reflect, nor purported to reflect, the parties' positions on any matter.  Following an appropriate opportunity for client consultation, we should be ready to advise Your Honor on defendants' position regarding a possible stay by the time of next week's call.  Mr. Anyanwu's added assertion that defendants have made representations about the collateral-estoppel effect of any future judgment in *Meiselman* is flatly incorrect, and Mr. Anyanwu has expressed to me regret for any confusion his letter may have caused on this point.  For the sake of clarity, the defense reserves all rights to make appropriate submissions as part of any future proceedings, including on the effect of any future judgment in *Meiselman*.

(Letter from Daniel P. Moylan to Hon. Tonianne J. Bongiovanni of 10/23/2014).

In light of the parties' correspondence, the Court moved the scheduled telephone conference up to October 27, 2014.  During the conference, the Court, in part, discussed the possibility of a stay and the benefits to be obtained therefrom such as preserving judicial economy and increasing the likelihood of a settlement.  Given the potential time sensitive nature

of certain of Plaintiffs' discovery requests, the Court did not immediately impose a stay. However, after addressing the relevant discovery issues, the Court, with the consent of the parties, stayed this matter pending a final disposition of the *Meiselman* litigation.  (Order of 11/12/2014; Docket Entry No. 32).

On May 5, 2015 the jury reached a verdict in the *Meiselman* case and on May 7, 2015, the Court entered a judgment of no cause for action in favor of HFGC and the other defendants in that matter.  (*Meiselman v. Hamilton Farm Golf Club LLC*, Civil Action No. 11-653 (AET) (May 7, 2015); Docket Entry No. 160 in Civil Action No. 11-653).  After that judgment was entered, on May 8, 2015, this Court scheduled a telephone conference for May 27, 2015.  (Text order of 5/8/2015; Docket Entry No. 33).  During that conference, Plaintiffs indicated that they were ready to move forward immediately with discovery.  HFGC raised the possibility of moving for summary judgment on preclusion grounds.  The Court deferred deciding whether to permit HFGC to file a preclusion based motion.  Instead, it lifted the stay of discovery and directed the parties to submit a written status update by June 30, 2015 regarding any issues that they were unable to resolve with respect to written discovery.  (*See* Minute Entry of 5/27/2015).

While issues arose regarding depositions, the only substantial issue to arise concerning written discovery involved HFGC's nine document requests served on May 28, 2015.  These requests sought to discover what, if any, communications were had between counsel for Plaintiffs here and counsel for the plaintiffs in the *Meiselman* case and whether any of Plaintiffs here communicated directly with plaintiffs' counsel in *Meiselman*.  (*See* HFGC's First Set of Document Requests of 5/28/2015; Docket Entry No. 35-3).  Plaintiffs objected to all of HFGC's requests.  (*See* Pl. Objections and Responses to HFGC's First Set of Document Requests; Docket Entry No. 35-4).  The parties were unable to successfully resolve this issue on their own and

therefore raised it with the Court.  (*See generally*, (1) Letter from Christopher N. Tomlin to Hon. Tonianne J. Bongiovanni of 7/2/2015; Docket Entry No. 35-6); (2) Letter from Evans C. Anyanwu to Hon. Tonianne J. Bongiovanni of 7/2/2015; Docket Entry No. 35-7); (3) Letter from Christopher N. Tomlin to Hon. Tonianne J. Bongiovanni of 7/8/2015; Docket Entry No. 35-8). While the Court generally prefers to avoid the time and expense of motion practice when practical, the Court determined that in this instance the parties' dispute over HFGC's proposed preclusion defenses and related discovery should be addressed in formal motions.  As a result, the Court directed HFGC "to file a formal motion to compel discovery as well as a separate motion to amend [its] Answer."  (Email from Sharon Bray to counsel of 8/11/2015; Docket Entry No. 35-9).  The motions were originally scheduled to be filed by August 28, 2015, but that date was later adjourned to September 11, 2015.  (*Id.*)  HFGC complied and the Court addresses its motions (Docket Entry Nos. 35 & 36) herein.

## II.  Analysis

### A.  Standard of Review

#### 1.  Motions to Compel Discovery

Federal Rule of Civil Procedure ("Rule") 26 governs the permissible scope of discovery. Pursuant to Rule 26, the scope of discovery is quite broad.  Indeed, Rule 26(b) provides:[5]

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears

[5] Given the timing of HFGC's motion to compel, the Court applies Rule 26(b) as it existed prior to its recent amendment.

6

reasonably calculated to lead to the discovery of admissible evidence.

Despite this breadth, the scope of discovery is not limitless.  For example, "courts will not permit parties to engage in fishing expeditions" because "the discovery rules are designed to assist a party to prove a claim [or defense] that it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim."  *MacDermid Printing Solutions, L.L.C. v. E.I. du Pont de Nemours and Co.*, Civil Action No. 07-4325 (MLC), 2008 WL 323764, *1 (D.N.J. Feb. 5, 2008) (internal quotation marks and citation omitted).  In addition, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  Rule 26(b)(1).  According to Rule 26(b)(2)(C):

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that:
>
> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Further, pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Good cause must be demonstrated by the party seeking the protective order.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

When a dispute arises over the appropriate scope of discovery, as is the case here, the Court has broad discretion in deciding same.  *See Gerald Chamles Corp. v. Oki Data Americas, Inc.*, Civ. No. 07-1947 (JEI), 2007 WL 4789040, at *1 (D.N.J. Dec. 11, 2007) (stating that it is

"well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]")  Indeed, it is well settled that the appropriate scope of discovery and the management of requests for discovery are left to the sound discretion of the Court.  *See Salamone v. Carter's Retail, Inc.*, Civil Action No. 09-5856 (GEB) 2011 WL 310701, *5 (D.N.J. Jan. 28, 2011); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (finding that conduct of discovery is committed to sound discretion of Court).

### 2.    Motions to Amend the Pleadings

According to Rule 15(a), leave to amend the pleadings is generally granted liberally.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, the Court may deny a motion to amend where there is "undue delay, bad faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* Nevertheless, where there is an absence of the above factors: undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be granted freely.  *Long*, 393 F.3d at 400.

In deciding whether to grant leave to supplement or amend a pleading, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267,

8

273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).  Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay.  *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).  A motion to amend is also properly denied where the proposed amendment is futile. *See Foman,* 371 U.S. at 182; *Alvin*, 227 F.3d at 121.

Rule 15(d) allows a party to supplement a pleading.  According to Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Motions to supplement a pleading should be freely given according to essentially the same standards as applied to motions to amend brought under Rule 15(a).  *See Tormasi v. Hayman*, 09-cv-2330, 2010 WL 1878961, at *2 (D.N.J. May 10, 2010).

**B.     Discussion**

Through its motion to compel, HFGC seeks to require Plaintiffs to respond substantively to its nine document requests seeking information to support its proposed preclusion defenses of *res judicata* and collateral estoppel.  Through its motion to amend, HFGC seeks permission to actually assert those defenses.

As summarized by the Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008):

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata."  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.  By "preclude[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserve[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions."

A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court."  Indicting the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."

*Id*. at 892-93 (citations omitted).

While the rule against nonparty preclusion is well established, it is not absolute.  Instead, like most rules, it is subject to exceptions.  These exceptions fall into the following six categories:

First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."

\*\*\*

Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment.  Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."

\*\*\*

10

> Third, we have confirmed that, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit.  Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries[.]
>
> ***
>
> Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered."
>
> ***
>
> Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy.
>
> ***
>
> Sixth, in certain circumstances a special statutory scheme may "expressly foreclose[e] successive litigation by nonlitigants … if the scheme is otherwise consistent with due process.

*Id*. at 893-95 (citations omitted).   While these "discrete exceptions that apply in 'limited circumstances'" exist, "the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party" remains key.  *Id*. at 898 (citations omitted).

While the Court does not agree with Plaintiffs that HFGC waited too long to raise its request to amend to add its proposed preclusion defenses – the *Meiselman* judgment did not become final until May 8, 2015, only 19 days before HFGC raised the issue – the Court, under the facts of this case, finds no credible basis to depart from the general rule that Plaintiffs are not bound by the *Meiselman* judgment.  Despite HFGC's arguments to the contrary, none of the discrete exceptions would appear to apply to give the *Meiselman* decision preclusive effect over Plaintiffs here who were not only non-parties to the *Meiselman* matter, but who are also represented by different counsel.  In this regard, the Court finds no basis on which to determine that Plaintiffs agreed to be bound by the *Meiselman* decision, had the type of relationship with the *Meiselman* plaintiffs to justify non-party preclusion, were adequately represented by the

*Meiselman* plaintiffs so as to give the *Meiselman* decision preclusive effect, assumed control over the *Meiselman* litigation thereby precluding their prosecution of this matter or are acting as proxies for the *Meiselman* plaintiffs.  Instead, everything points to Plaintiffs being different persons pursuing their own interests through different counsel.

   Nor does the Court believe that discovery is warranted to explore HFGC's proposed preclusion defenses.  For example, the similarity of subject matter between the *Meiselman* case and Plaintiffs' lawsuit is of little value.  As noted above, there have been several litigations involving HFGC's refusal to refund membership deposits pursued throughout courts in New Jersey.  Unlike HFGC, the Court does not view Plaintiffs' Complaint as being "cribbed" from the *Meiselman* pleading; instead, the two pleadings are similar because of the nature of both cases.  If anything, both pleadings are cribbed from HFGC's Membership Plan, Membership Agreement and FAQ pamphlet, all of which provide much of the factual information supporting both groups of plaintiffs' claims.

   Further, the Court won't entertain Defendants' complaint about Plaintiffs' failure to seek to join their claims with the *Meiselman* matter as evidence of their tactical maneuvering justifying preclusion related discovery now.  First, as evidenced by the multiple litigations involving the same general subject matter at issue here and in *Meiselman*, while some former HFGC members joined in the *Meiselman* case, plenty of others pursued their own separate lawsuits.  Second, if HFGC believed Plaintiffs' claims should have been heard along with the *Meiselman* plaintiffs, HFGC could have moved to consolidate the two matters.  It did not.

   In addition, Plaintiffs here did not simply sit back and wait for a decision in *Meiselman* before pursuing their claims.  Instead, from March 10, 2014, the date of the Initial Conference, Plaintiffs actively pursued their claims, engaging in discovery with HFGC.  Plaintiffs did not, on

their own accord, seek to stay this matter pending *Meiselman*.  Instead, HFGC and the Court

broached that subject.  While Plaintiffs considered the possible collateral estoppel effect a

decision in *Meiselman* might have on HFGC in this litigation (based in part on what Plaintiffs

believed to be HFGC's representations) in considering whether to agree to a stay, there is no

evidence that Plaintiffs ever believed HFGC would be entitled to pursue preclusion defenses.  In

fact, the Court is confident that if Plaintiffs ever believed that HFGC would attempt to use

Plaintiffs' acquiescence to a stay to support an argument that Plaintiffs were privies of the

*Meiselman* plaintiffs thereby justifying the application of collateral estoppel and/or *res judicata*,

Plaintiffs would have never consented to the entrance of same.  Further, even after this matter

was stayed, Plaintiffs sought an exception to the stay to conduct limited discovery.  Clearly,

Plaintiffs here had every intention of pursuing their own claims on their own merits.

Under these circumstances, the Court finds that discovery concerning HFGC's proposed

preclusion defenses is not warranted.  While there are situations in which "targeted

interrogatories or deposition questions" may be appropriate to "reduce the information disparity"

regarding the propriety of applying nonparty preclusion, this is not one of those situations.

*Sturgell*, 553 U.S. at 907.  As a result, HFGC's motions to compel discovery and to amend its

pleading are denied.

While HFGC's motions were pending, an issue arose regarding Plaintiffs' obligation to

preserve the information requested by HFGC regarding its proposed preclusion defenses, *i.e.*, the

subject matter at issue in HFGC's motion to compel discovery.  The Court informally responded

in the affirmative.  Despite the Court's decision denying HFGC's motions to compel discovery

and to amend its pleading, Plaintiffs remain under an obligation to preserve said information

until a final judgment in this case is rendered and all appeals are decided.

**III.     Conclusion**

For the reasons stated above, HFGC's motions seeking to compel discovery from

Plaintiffs and leave to file an Amended Answer in order to assert preclusion defenses are

DENIED.  An appropriate Order follows.

Dated:  January 28, 2016

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**