NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY SPIKES *et al.*,<br><br>      Plaintiffs,<br><br>  v.<br><br>HAMILTON FARM GOLF CLUB, LLC, *et al.*,<br><br>      Defendants. | Civ. No. 13-3669<br><br>OPINION |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter is before the Court upon an Appeal of Magistrate Judge Bongiovanni's January 28, 2016 Order by Defendant Hamilton Farm Golf Club, LLC ("Defendant"). (ECF No. 49). Plaintiffs Anthony Spikes, Howard Yung, Jerry Sager, and Kevin McMurtry ("Plaintiffs") oppose. (ECF No. 53). The Court has decided this Appeal based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's Appeal will be denied.

## BACKGROUND

As the parties are familiar with the facts of this case, the Court will only recite the facts relevant to this motion. This case, like many others that have been pursued in the courts of New Jersey,[1] arises out of Defendant's refusal to refund Plaintiffs' membership deposits that they paid

---

[1] These cases include: (1) *Meiselman v. Hamilton Farm Golf Club LLC*, Civ. No. 11-653; (2) *Bava v. Hamilton Farm Golf Club, et al.*, Civ. No. 08-5473; (3) *Matina v. Hamilton Farm Golf Club, et al.*, Civ. No. 08-5725; and (4) *McCarthy v. Hamilton Farm Golf Club*, Doc. No. SOM-L-267-11.

as part of a golf club membership program at the Hamilton Farm Golf Club. Plaintiffs had all paid six-figure membership fees, and later resigned from the Golf Club. Despite their resignations and the purportedly refundable nature of their membership deposits, Defendant has not repaid the money allegedly due and owing to Plaintiffs. (*Id.* at ¶ 21). Based on the foregoing, Plaintiffs claim that Defendant breached the covenant of good faith and fair dealing. (*Id.* at ¶¶ 38-39).[2]

On February 5, 2014, Defendant answered Plaintiffs' Complaint. (ECF No. 27). At the time the Answer was filed, litigation concerning Defendant's refundable membership deposits had been ongoing for over five years and the similar *Meiselman* matter in particular had been pending for three years. Plaintiffs were not part of the *Meiselman* matter, and they were represented by a different attorney. An initial conference was held in this case on March 11, 2014 with Magistrate Judge Tonianne J. Bongiovanni. While the *Meiselman* matter was briefly discussed during the conference, a formal discovery schedule was entered in this case setting various deadlines, including fact and expert discovery deadlines and deadlines for motions to amend the pleadings and to join new parties. (ECF No. 29).

The next conference with Magistrate Judge Bongiovanni was on July 9, 2014. Given the overlapping subject matter, Magistrate Judge Bongiovanni again briefly discussed the *Meiselman* proceedings. At that juncture, Magistrate Judge Bongiovanni determined that the *Meiselman* matter did not impact the proceedings in this case. As a result, the case continued to move forward with Magistrate Judge Bongiovanni extending the parties' deadlines, specifically extending fact discovery to November 11, 2014.

---

[2] Plaintiffs originally raised six other counts in their Complaint. These counts, however, have since been dismissed. (*See* ECF Nos. 25-26).

After receiving correspondence from the parties that referenced the *Meiselman* case and potential collateral estoppel issues in this case, Magistrate Judge Bongiovanni scheduled a telephone conference for October 27, 2014. During the call, Magistrate Judge Bongiovanni discussed the possibility of a stay and the benefits to be obtained therefrom such as preserving judicial economy and increasing the likelihood of a settlement. Given the potentially time-sensitive nature of certain of Plaintiffs' discovery requests, Magistrate Judge Bongiovanni did not immediately impose a stay. However, after addressing the relevant discovery issues, Magistrate Judge Bongiovanni, with the consent of the parties, stayed this matter pending a final disposition of the *Meiselman* litigation. (ECF No. 32).

On May 5, 2015 the jury reached a verdict in the *Meiselman* case and on May 7, 2015, the Court entered a judgment of no cause for action in favor of Defendant. Magistrate Judge Bongiovanni promptly scheduled a call with the parties in this case for May 27, 2015. During that call, Plaintiffs indicated that they were ready to move forward immediately with discovery. Defendant raised the possibility of moving for summary judgment on preclusion grounds, based on the outcome of the *Meiselman* trial. Magistrate Judge Bongiovanni deferred deciding whether to permit Defendant to file a preclusion-based motion. Instead, she lifted the stay of discovery and directed the parties to submit a written status update by June 30, 2015 regarding any issues that they were unable to resolve with respect to written discovery. (*See* Minute Entry of May 27, 2015).

While issues arose regarding depositions, the only substantial issue to arise concerning written discovery involved Defendant's nine document requests served on May 28, 2015. These requests sought to discover what, if any, communications were had between counsel for Plaintiffs in this case and counsel for the plaintiffs in the *Meiselman* case, and whether any of the plaintiffs in this case had communicated directly with the plaintiffs' counsel in *Meiselman*. (*See*

3

Def.'s First Set of Document Requests, ECF No. 35-3). Plaintiffs objected to all of Defendant's requests. (*See* Pls.' Objections and Responses to Defendant's First Set of Document Requests, ECF. No. 35-4). The parties were unable to successfully resolve this issue on their own and therefore raised it with Magistrate Judge Bongiovanni. (*See* ECF Nos. 35-6, 35-7, 35-8). Magistrate Judge Bongiovanni determined that the parties' dispute over Defendant's proposed preclusion defenses and related nine discovery requests should be addressed in formal motions. On September 11, 2015, Defendant filed a motion to compel discovery and a motion to amend its answer to include affirmative defenses based on res judicata and collateral estoppel. (ECF Nos. 35, 36).

On January 28, 2016, Magistrate Judge Bongiovanni denied both of Defendant's motions. (ECF No. 47). Magistrate Judge Bongiovanni found that there was no basis upon which Defendant could argue that Plaintiffs should be bound by the outcome of the *Meiselman* trial. (ECF No. 46 at 11). Magistrate Judge Bongiovanni therefore also found that any further discovery concerning Defendant's preclusion defenses was not warranted. (*Id.* at 13). Defendant timely appealed Magistrate Judge Bongiovanni's decision, and this Appeal is presently before the Court.

## LEGAL STANDARDS

When a district court judge reviews a magistrate judge's decision, the district court judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* A magistrate judge's factual finding is clearly erroneous when, after considering the entirety of the evidence, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990). A ruling is contrary to law when a magistrate judge "has misinterpreted or misapplied applicable law." *United States ex rel. Bahsen v. Boston Sci. Neuromodulation Corp.*,

4

No. 11-1210, 2015 WL 7720485, at *2 (D.N.J. Nov. 30, 2015) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). The burden of showing that a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

Under Federal Rule of Civil Procedure 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.*

## ANALYSIS

Defendant appeals Magistrate Judge Bongiovanni's decision to deny two of Defendant's motions. Defendant's first motion was a motion for leave to amend its answer. (ECF No. 36). Defendant proposed adding two preclusion defenses based on the favorable outcome it had in the *Meiselman* trial. Defendant's second motion was a motion to compel discovery. (ECF No. 35). Defendant requested that the Court compel Plaintiffs to produce documents regarding Plaintiffs' communications with the *Meiselman* plaintiffs and counsel. Magistrate Judge Bongiovanni held that Defendant's preclusion defenses were futile, and therefore further discovery to support those defenses was not warranted. (ECF No. 46 at 11-13).

Collateral estoppel bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). Generally, defendants may not use collateral estoppel against plaintiffs who were not parties to the prior litigation. *Id.* Plaintiffs were not parties to the *Meiselman*

5

litigation. Therefore, under the general rule, Defendant could not use the *Meiselman* verdict to bar Plaintiffs via collateral estoppel or the related doctrine of res judicata.[3]

In *Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008), the Supreme Court articulated six exceptions to this general rule. The Third Circuit summarized the exceptions thusly:

> 1) the nonparty agrees to be bound by the determination of issues in an action between others;
> 2) a substantive legal relationship—i.e. traditional privity—exists that binds the nonparty;
> 3) the nonparty was adequately represented by someone with the same interests who was a party;
> 4) the nonparty assumes control over the litigation in which the judgment is rendered;
> 5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and,
> 6) the nonparty falls under a special statutory scheme that expressly forecloses successive litigation by nonlitigants.

*Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 312-13 (internal quotation marks omitted). Defendant indicates that its preclusion defenses would fall under either the first or second exception. (*See* Def.'s Br., ECF No. 49-1 at 6 (citing cases where a court inferred nonparty's consent to be bound by a prior judgement); *id.* at 12 (questioning whether Plaintiffs' relationship with the *Meiselman* plaintiffs rose to the level of privity)). Magistrate Judge Bongiovanni

---

[3] Defendants use the terms "collateral estoppel" and "res judicata" in their proposed affirmative defenses. (ECF No. 35-16 at 7). The Supreme Court appears to prefer the more modern term "issue preclusion" instead of "collateral estoppel." *See Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008). The Supreme Court has recently described both issue preclusion and claim preclusion as falling under the umbrella of "res judicata." *Id.* at 892. However, the Supreme Court has previously suggested that "res judicata" is synonymous solely with claim preclusion. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001). Regardless of any confusion on the issue, both Defendant and Magistrate Judge Bongiovanni appear to agree that *Taylor v. Sturgell* provides the relevant framework for this case, and they refer to the issue as one of "nonparty preclusion." The Third Circuit also uses the term "nonparty preclusion" in its primary case interpreting *Sturgell*, *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299 (3d Cir. 2009). This Court will follow suit by discussing "nonparty preclusion" and Defendant's proposed "preclusion defenses."

concluded that Defendant's proposed defenses failed under each possible exception, and therefore it was appropriate to deny leave to amend as futile.  (ECF No. 46 at 11-12).

As Defendant notes, the futility standard for amending its answer is identical to the 12(b)(6) standard for futility.  *Hua v. Mortgage*, No. 14-7821, 2015 WL 5722610, at *7 n.10 (D.N.J. Sept. 29, 2015).  Defendant argues that Magistrate Judge Bongiovanni's decision constitutes reversible error because Defendant was not required at the pleading stage to provide any evidence supporting its defenses.  (Def.'s Br., ECF No. 49-1 at 1).  While Defendant need not provide evidence at this stage, just as in a 12(b)(6) motion, Defendant's proposed amendment will fail if it is legally insufficient on its face.  *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).  Under the Third Circuit's interpretation of *Sturgell*, Defendant's proposed affirmative defenses are facially legally insufficient.

Addressing the first exception to the general bar against nonparty preclusion, Defendant cites a string of cases where a court "inferred" that a nonparty consented to be bound to a previous judgment.  (Def.'s Br., ECF No. 49-1 at 6-7).  None of these cases are within the Third Circuit, and only two were decided after the Supreme Court announced the controlling rule in *Sturgell*.  These two cases do not support Defendant's argument.  In *Steffen v. C.I.R.*, 104 T.C.M. 303 (T.C. 2012), a tax court concluded that a party was bound by a previous judgment because that party had *explicitly* consented to be bound by a previous judgment (though he later tried to disavow this consent).  Defendant does not allege that Plaintiffs ever explicitly consented to the *Meiselman* judgment.  The second post-*Sturgell* case is *Henry E. & Nancy Horton Bartels Trust ex rel. Cornell Univ. v. United States*, 88 Fed. Cl. 105, 113 (2009), *aff'd sub nom. Bartels Trust for benefit of Cornell Univ. ex rel. Bartels v. United States*, 617 F.3d 1357 (Fed. Cir. 2010). Defendant cites this case for the proposition that a party may explicitly or implicitly agree to be bound by a prior judgment.  (Def.'s Br., ECF No. 49-1 at 7-8).  This proposition is supported by

7

this case and by *Sturgell*, which both cite the same section of the Restatement (Second) of Judgments. *Taylor v. Sturgell*, 553 U.S. at 894 n.7; *Henry E. & Nancy Horton Bartels Trust*, 88 Fed. Cl. at 113.

While Defendant relies heavily on this section of the Restatement in its brief, (*See* Def.'s Br., ECF No. 49-1 at 6, 9), Defendant neglects to include the Restatement's caution that "no such agreement [to be bound] should be inferred except upon the plainest circumstances." Restatement (Second) of Judgments § 40 cmt. b (1982). There are no such plain circumstances in this case. This case stands in stark contrast to the Restatement's example of an implied agreement:

> A brings an action to restrain B, a common carrier, from putting a rate increase into effect. C, who appeared with A in a prior administrative hearing challenging the rate, brings a similar action, employing the same attorney, and asserting substantially identical claims. C requests deferral of his suit until the trial of A against B, stating that the two actions involve identical issues and that the deferral will prevent duplication of trial proceedings. It may be inferred that C consented to be bound by the determinations made in the action between A and B.

Restatement (Second) of Judgments § 40 cmt. b (1982). Plaintiffs did not employ the same attorney as the *Meiselman* plaintiffs. The two groups had never appeared together before. Defendant does not dispute that Magistrate Judge Bongiovanni was the one who decided to stay the case with the consent of both parties. Even assuming Defendant's allegations of collaboration between Plaintiffs and the *Meiselman* plaintiffs were true, this case would not resemble the Restatement's example of an implied agreement to be bound. Therefore, Magistrate Judge Bongiovanni's determination that Defendant's preclusion defenses are futile under the first *Sturgell* exception is not clearly erroneous or contrary to law.

Addressing the second *Sturgell* exception, Defendant asserts that additional facts could be discovered to show that Plaintiffs' relationship with the *Meiselman* plaintiffs reached the level of privity necessary to bar Plaintiffs' claims. (*See* Def.'s Br., ECF No. 49-1 at 12). The Third

Circuit discussed the "privity" requirement under the second *Sturgell* exception at length in *Nationwide Mutual Fire Insurance Company*, 571 F.3d at 310-12.  The Court explained that privity requires "a prior legal or representative relationship between a party to the prior action and the nonparty against whom estoppel is asserted.  Without such a relationship, there can be no estoppel." *Id.* at 312.  The Supreme Court offered examples of prior qualifying relationships, including bailor-bailee, and assignor-assignee.  *Taylor v. Sturgell*, 553 U.S. at 894.  Defendant's allegations do not suggest that the two sets of plaintiffs ever had an actual legal or representative relationship.  Rather, Defendant's allegations of collaboration more closely resemble the "virtual privity" or "virtual representation" doctrine that *Sturgell* and the Third Circuit both rejected.  *See id.* at 904; *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 312.  Therefore, Magistrate Judge Bongiovanni's determination that Defendant's preclusion defenses are futile under the second *Sturgell* exception is not clearly erroneous or contrary to law.

Defendant mentions the other four *Sturgell* exceptions in a footnote, but Defendant does not argue that any of these exceptions apply to their preclusion defenses.  Magistrate Judge Bongiovanni's determinations as to these remaining exceptions are not clearly erroneous or contrary to law.  Magistrate Judge Bongiovanni ultimately concluded that because none of the *Sturgell* exceptions could serve as a basis for Defendant avoiding the general bar against nonparty preclusion, it was appropriate to deny Defendant leave to amend due to the futility of the amendment.  This conclusion follows the applicable standard for motions to amend, and is therefore not clearly erroneous or contrary to law.

Defendant also appeals Judge Bongiovanni's decision to deny its motion to compel discovery.  Defendant argues that if Plaintiffs were compelled to produce records regarding Plaintiffs' relationship to the *Meiselman* plaintiffs and counsel, then Defendant might find sufficient evidence to pursue its preclusion defenses.  (*See* Def.'s Br., ECF No. 49-1 at 12-13).

9

However, as determined above, even if Defendant were to discover evidence supporting its allegations, this evidence would not be sufficient to support its preclusion defenses.  Defendant may not engage in a fishing expedition in the hope that it might find additional evidence beyond its present speculations about Plaintiffs' collaboration with the *Meiselman* plaintiffs or counsel. *Justiano v. G4S Secure Sols., Inc.*, 291 F.R.D. 80, 83 (D.N.J. 2013).  Therefore, Magistrate Judge Bongiovanni's decision to deny Defendant's motion to compel discovery was not clearly erroneous or contrary to law.

## CONCLUSION

For the reasons discussed above, Defendant's Appeal will be denied.  An appropriate order will follow.

       */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.